IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

IN RE:                                    )
                                          )        Chapter 13
MARK E. TATE,                             )
                                          )        Bankruptcy No. 16-01538
        Debtor.                           )

## RULING ON DEBTOR'S AMENDED MOTION TO REIMPOSE STAY

This matter came before the Court for an evidentiary hearing on December 22, 2016. Tom Fiegen appeared for Citizens Finance Company ("Citizens"). Derek Hong appeared for Debtor Mark Tate ("Debtor"). After the Court received evidence and heard argument, it allowed the temporary stay to remain in place until December 28, 2016. The Court noted that the stay would likely remain in effect conditioned on adequate protection payments being made to Citizens. The Court gave the parties time to brief the amount of adequate protection payments. The parties filed briefs. This is a core proceeding under 11 U.S.C. § 157(b)(2)(G).

## STATEMENT OF THE CASE

This is Debtor's third bankruptcy case this year. Under the Bankruptcy Code, there is no automatic stay for a third case filed within one year. A debtor must seek to impose the stay. Debtor asks for stay protection against Citizens and argues that he filed this case in good faith. Citizens argues that Debtor did not file in good faith. Citizens argues that, even if Debtor did file in good faith and the stay is imposed, it is entitled to $125 monthly adequate protection payments.

Debtor argues that the Court should impose the stay contingent on adequate

protection payments of $53 to Citizens.  The Court agrees with Debtor.

## BACKGROUND AND STATEMENT OF FACTS

This is Debtor's third Chapter 13 bankruptcy case within the last year.

Debtor previously filed Chapter 13 bankruptcy on December 2, 2015 and again on

September 12, 2016.  Citizens is a secured creditor in Debtor's bankruptcy with a

claim secured by Debtor's 2002 GMC Sierra ("the Sierra").

In his first bankruptcy, Debtor confirmed a Chapter 13 plan and made some

payments to the Trustee.  None of the money from those payments went to

Citizens.  Debtor later voluntarily dismissed the case because he could not keep up

with the plan payments and stay current on his mortgage.  Debtor planned to file a

second case to pay his new post-petition mortgage arrearages under a new plan.

Debtor's second bankruptcy was short.  Because it was filed within one year

of an old case the automatic stay only lasted 30 days.  Debtor filed a motion to

extend the stay, but in order to do so, the Court had to complete a hearing on the

motion with that 30 days.  The hearing was not held within 30 days.  As a result,

the stay could not be extended.  Debtor dismissed the case and planned to refile.

Debtor filed this third bankruptcy on December 5, 2016.  The next day,

Debtor filed a motion to impose the stay.  This motion was concerned primarily

with staying foreclosure on Debtor's home.  The motion was served on the

2

mortgage creditor, but not on Citizens. The Court imposed a temporary stay pending full hearing. Citizens learned about the motion and the temporary stay at the hearing. On December 13, Citizens filed a motion seeking a determination that the temporary stay did not apply to Citizens. On December 14, the Court granted Debtor's original motion to impose the stay against the mortgage creditor.

Citizens then asked for a hearing on its December 13 motion to determine the stay did not apply to it. At this hearing, Debtor objected and the Court set the matter for evidentiary hearing. Debtor filed an amended motion for imposition of the stay against Citizens on December 21 and served it on Citizens.

At the December 22 evidentiary hearing on Debtor's amended motion, Debtor testified that he had filed his case in good faith. Debtor testified that he confirmed a plan in his first case and made payments under that plan. Debtor testified that he dismissed his first case only so he could refile to address his post-petition mortgage arrearage in the second case. He testified that second case was dismissed because the Court had not set the hearing to continue the automatic stay within the proper timeframe. Debtor testified that he has filed all cases with the intention of paying his creditors what he could. Debtor testified that the Sierra is his only vehicle, which he needs to get to work, and that he drives an average of 70 miles a day on work days.

Debtor also directed the Court's attention to the values for the Sierra stated in his bankruptcy schedules. In his first bankruptcy, Debtor valued the truck at $3,645 and confirmed a plan using this value. Now, in this third bankruptcy, Debtor has listed the value of the Sierra at $3011. Based on these filings, the Sierra has depreciated $634 over the last year.

The Court heard testimony from Mike Campbell, a representative from Citizens. Mr. Campbell has worked in automotive financing for 32 years. He testified about a number of subjects including the Sierra's deprecation. Mr. Campbell testified that older vehicles like the Sierra could depreciate as much as $1,500 a year depending on mileage and condition.

## DISCUSSION

The parties first dispute whether the stay should take effect as to Citizens. Debtor argues that he filed this case in good faith as to all his creditors. Citizens argues that Debtor has not rebutted the presumption of bad faith in this case.

"The automatic stay comes into effect on the filing of a petition and prohibits certain actions, regardless of whether the parties taking them are aware that the filing has been made." In re Campbell, 356 B.R. 722, 724 (Bankr. W.D. Mo. 2006) (citing LaBarge v. Vierkant (In re Vierkant), 240 B.R. 317, 320 (8th Cir. BAP 1999)). "Among other things, it operates as a stay of any act to enforce a lien against property of the estate." Id. (citing 11 U.S.C. § 362(a)(4)).

4

This is Debtor's third Chapter 13 case filed within the same year.  Section 362 provides that in such a third case there is no automatic stay:

> [I]f a single or joint case is filed by or against a debtor who is an individual under this title, and **if 2 or more single or joint cases of the debtor were pending within the previous year but were dismissed**, other than a case refiled under a chapter other than chapter 7 after dismissal under section 707(b), **the stay under subsection (a) shall not go into effect upon the filing of the later case** . . .

11 U.S.C. § 362 (c)(4)(A)(i).  This creates a presumption that the third case was not filed in good faith.  In re Kurtzahn, 337 B.R. 356, 363 (Bankr. D. Minn. 2006). Nevertheless, within 30 days of filing the petition, debtors may ask the Court that the stay take effect.  11 U.S.C. § 362 (c)(4)(B).  To do so, however, debtors must show that they filed the case in good faith:

> **[I]f, within 30 days after the filing of the later case, a party in interest requests the court may order the stay to take effect** in the case as to any or all creditors (subject to such conditions or limitations as the court may impose), after notice and a hearing, **only if the party in interest demonstrates that the filing of the later case is in good faith** as to the creditors to be stayed.

11 U.S.C. § 362 (c)(4)(B).

It is debtor's burden to rebut the presumption of bad faith and show by clear and convincing evidence that he filed the case in good faith.  In re Morales, 366 B.R. 919, 921 (Bankr. D. Neb. 2007).  The likelihood that debtor's plan will succeed is the most important factor in determining good faith.  Id. at 922; see also Campbell, 356 B.R. at 725–26 (no good faith where debtor did not present

5

evidence that he intended to confirm a plan in any of his cases). "Accurately stating debts and expenses, not misleading the bankruptcy court, and not unfairly manipulating the Bankruptcy Code" are also relevant. Id. (citing Educ. Assistance Corp. v. Zellner, 827 F.2d 1222, 1227 (8th Cir. 1987).

Here, the Court finds that Debtor has rebutted the presumption of bad faith. Importantly, Debtor confirmed a plan and made payments into that plan in his first case. This evidences a sincere intent from the start to repay creditors from his disposable income. Citizens is correct, however, that those plan payments did not go to Citizens. In fact, Citizens has not received a payment since August 2015. The lack of payments during the plan, however, was because Trustee was making payments according to the proper payment priority requirements, not because of any manipulation on Debtor's part.

Moreover, Debtor did not file simply to avoid foreclosure then dismiss and refile—he reiterated that it is his intent to pay his creditors what he could afford. Debtor testified that his motivation behind later filings was to get a workable plan confirmed. He testified that he dismissed his first case to refile and address his post-petition mortgage arrearage in the second case. He then properly pointed out that the second case was dismissed because the Court had not set the hearing within the proper timeframe to continue the automatic stay. The Court finds his testimony credible. Debtor's motivation for these filings was to get a feasible and

6

workable plan confirmed.  Finally, there is no evidence that Debtor has not accurately stated his debts and expenses, has misled the bankruptcy court, or unfairly manipulated the Bankruptcy Code.  Debtor has rebutted the presumption of bad faith and shown by clear and convincing evidence that this case was filed in good faith as to Citizens.  As a result, the automatic stay will take effect.

Citizens argues that, even if there is a stay, Citizens is entitled to relief from the stay because its interest in the Sierra is not adequately protected.  Citizens argues that it has not received a payment for 18 months and that the Sierra is depreciating every day—especially since it is being driven 70 miles a day.  Citizen argues that, based on Mr. Campbell's testimony, the Sierra is depreciating as much as $125 a month.  Citizens requests that the stay be conditioned on $125 monthly adequate protection payments and asks that these payments continue during the plan and be paid as a priority claim in the plan.

Debtor agrees that Citizens is entitled to adequate protection payments.  He disagrees about the proper amount of those payments.  Debtor compares the scheduled value of the Sierra in the first case with the depreciated value in the schedules for this case.  He concludes that the Sierra is depreciating $53 a month. Debtor argues in the alternative that, if the Court finds that $125 a month depreciation is correct, he should be given leave to amend the scheduled value of the Sierra to reflect this greater depreciation amount.

7

Where a creditor has requested relief from the stay, courts may terminate, annul, modify, or condition the stay "for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1). "The concept of adequate protection was designed to recognize the fifth amendment protection of property interests." In re Kloubec, Bankr. No. 99-02325, 2000 WL 150837, at *5 (Bankr. N.D. Iowa Jan. 11, 2000). "Adequate protection is compensation paid to the creditor for the depreciation of its collateral." In re Butler, 403 B.R. 5, 11 (Bankr. W.D. Ark. 2009) (citing United Sav. Assoc. of Tex. v. Timbers of Inwood Forest Assoc., 484 U.S. 365, 370 (1988)). "The interest in property" that is entitled to protection is not the amount of the debt but the value of the lien. In re Pine Lake Vill. Apartment Co., 19 B.R. 819, 825 (Bankr. S.D.N.Y. 1982); see also In re Gilbertson Rests. LLC, Bankr. No. 04-00384, 2004 WL 1724876, at *2 (Bankr. N.D. Iowa May 20, 2004) ("[A]dequate protection is reimbursement to the creditor for a decrease in the value of the security, and thus of its lien . . . ."). Courts have great discretion on how adequate protection payments are to be made:

> [W]hile the amount of adequate protection to which an undersecured creditor is entitled is equal to the amount of depreciation its collateral suffers after it would have exercised its state law remedies, neither that determination nor the schedule for its tender are appropriate for application of a rigid formula. Instead, the bankruptcy court must have discretion to fix any initial lump sum amount, the amount payable periodically, the frequency of payments, and the beginning date, all as

8

dictated by the circumstances of the case and the sound exercise of that discretion.

Paccom Leasing Corp. v. Deico Elecs., Inc. (In re Deico Elecs., Inc.), 139 B.R. 945, 947 (B.A.P. 9th Cir. 1992); see also In re Vander Vegt, 499 B.R. 631, 637 (Bankr. N.D. Iowa 2013), aff'd sub nom. First Sec. Bank & Trust Co. v. Vegt, 511 B.R. 567 (N.D. Iowa 2014) (noting that adequate protection was intended to be a "flexible concept" subject to "case-by-case interpretation and development").

Here, the parties agree that the Sierra is depreciating (and so agree that Citizens is entitled to adequate protection payments) but disagree about how much the Sierra is depreciating. After reviewing the record, the Court finds that the Sierra is depreciating $53 a month. Although Mr. Campbell testified that older vehicles, like the Sierra, can depreciate up to $1,500 a year, this testimony was about vehicles generally, not the Sierra specifically. Moreover, he did not explain how he arrived at this number. The Court finds his testimony to be only an estimate from the high end of possible depreciation for older vehicles generally. The Debtor's values set out in his bankruptcy schedules—which were based on blue book values—is a more accurate estimate of the Sierra's depreciation over the last year. Citizens is entitled to $53 monthly adequate protection payments.

The Court also denies Citizens' additional request that adequate protection payments continue during the plan and that they be given priority status without prejudice.  Citizens may renew these requests at confirmation.

## CONCLUSION

**WHEREFORE**, Debtor's Amended Motion to Reimpose Stay is GRANTED.

**FURTHER**, the stay is conditioned on $53 monthly adequate protection payments being made to Citizens.

Dated and Entered:

December 28, 2016

_____

THAD J. COLLINS
CHIEF BANKRUPTCY JUDGE